#### IN THE

## SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF CHESHIRE, JULY TERM,

#### A. D. 1836.

---

## LEWIS PAGE *vs.* LUCIEN B. PAGE.

A resulting trust may be raised, rebutted, or discharged by parol evidence.

Where P bought land and took a deed in the name of L, and L advanced the purchase money and took the notes of P for the same, and agreed to convey the land to P on being repaid the money advanced, and interest—it was *held* that the money thus advanced by L might be considered as a loan to P, and the land as purchased with the money of P so as to raise a resulting trust.

In general, where there is a resulting trust in lands, whoever purchases the land of the trustee, with notice of the trust, becomes a trustee.

But this rule does not apply when the land is purchased of the trustee with the assent and at the request of the *cestui que trust*.

When the facts charged in a bill in equity are fully denied in the answer, there can be no decree against the answer on the evidence of a single witness, without corroborating circumstances to supply the place of a second witness.

When a father purchases land in the name of a son, no trust will in general result, but the conveyance to the son will be deemed an advancement.

BILL IN EQUITY. The plaintiff alleged in his bill, that previous to the 4th May, 1822, being desirous of purchasing lands, and being unable to pay for them, he made a contract with William Lamson, to advance money to the plaintiff to pay for lands purchased by the plaintiff, and to take deeds in Lamson's name, in trust for the plaintiff:

That afterwards, in pursuance of said agreement, the

plaintiff bought at sundry times, of sundry persons, several tracts of land and took deeds in Lamson's name, who advanced the money and took the plaintiff's notes for the same:

That on the 10th of December, 1824, the plaintiff bought of Enoch Wood ten acres of land, and paid for it, and took a deed in Lamson's name:

That the plaintiff, immediately after said purchases, entered into possession of said several tracts of land, and has ever since been in possession:

That William Lamson died on the 27th of June, 1828, having by his last will devised all his real estate to his wife and his five children:

That on the 2d of July, 1829, the plaintiff agreed with the children of the said Lamson, to convey to the defendant five undivided sixth parts of said lands, upon the defendant's giving security to the said children to pay the money advanced by said Lamson, as aforesaid, and interest, and certain other debts, amounting in the whole to $2583 93; and the defendant, well knowing that Lamson held the land in trust, agreed to accept the conveyance on the same trusts:

That the said heirs conveyed the said five sixth parts of the said lands to the defendant, and he accepted the conveyance on the terms aforesaid:

That ever since the last mentioned conveyance the defendant, who is the plaintiff's son, has lived with the plaintiff and worked for him on said farm.

That on the 28th of August, 1826, the plaintiff bought a tract of land of Perry & Wood, and took a deed in the name of E. Cheney, and W. Lamson advanced the purchase money and took Cheney's note and a mortgage of the land, to secure the payment; that Cheney accepted the deed in trust for the plaintiff, and received personal property as a pledge for his indemnity from the plaintiff; that the plaintiff went into possession of the land and paid interest on Cheney's note; that Lamson died, and in pursuance of an agreement between Cheney, the executors of Lamson and the

plaintiff and defendant, Cheney's note and the mortgage to Lamson were cancelled ; Cheney conveyed the land to the defendant, who gave his note to Lamson's executors for the amount due on said note given by Cheney to Lamson as aforesaid, and the defendant, knowing of the said trust, accepted the conveyance subject to the same trust :

That in 1832 the plaintiff purchased two other tracts of land, and took deeds of the same in the name of the defendant, who agreed to hold them in trust :

That all the tracts of land mentioned in this bill are one farm, which the plaintiff has greatly improved by cultivation.

The prayer of the bill is, that the defendant may be decreed to release to the plaintiff, upon being indemnified for all advances.

The defendant, in his answer, admits the conveyances made to William Lamson, as stated in the bill : and that the plaintiff went into possession, and, with the exception of two years, continued in possession until the land was conveyed to the defendant, since which time he denies that the plaintiff has occupied the lands on his own account.

He denies that he has any knowledge that the plaintiff gave promissory notes to Lamson, as stated in the bill.

As to the ten acres bought of Enoch Wood and conveyed to Lamson, 10th of December, 1824, the defendant denies that the plaintiff paid for the land and that the defendant took it upon trust.

The defendant admits the death of Lamson, but denies that the plaintiff ever paid any part of the purchase money for said lands, except the land bought of Enoch Wood, of which he has no knowledge.

He admits that Lamson, before his decease, left directions to his heirs to convey said lands to the plaintiff, on payment of the sums paid by Lamson for said lands, and interest.

He alleges that after the decease of Lamson, and ever since, the plaintiff was destitute of the means to pay for the lands, and that the defendant, at the request of the plaintiff,

took a conveyance of the same from the heirs of Lamson, and paid them $2583 93, being the amount of the money paid by Lamson for the lands and of certain debts due from the plaintiff to some of the heirs.

He denies that he took the conveyance from said heirs upon any trust whatever.

He alleges that the understanding between him and the heirs of Lamson, was, that he bought, and they conveyed to him, the whole estate in said lands.

He admits that he took a deed of a tract of land from Cheney, for which he paid the heirs of Lamson $173, but denies all trust.

He admits that in 1832 he took deeds of two tracts of land, but he denies that the plaintiff paid for said lands and that there was any trust.

And he denies all improvements, which are alleged in the bill to be made by the plaintiff.

The cause was brought to a hearing on the pleadings and proofs.

*S. Hale*, for the plaintiff. William Lamson took and held the premises in trust for the orator, subject to his lien upon it for the money which he had advanced for the orator. The trust was a resulting trust, and the lien in the nature of a mortgage.

A trust resulted to the orator, because the money paid for the land was the money of the orator. The contract between the orator and Lamson; the notes given for the money; the interest paid, and not rent; the declarations of Lamson, that he did not want the land but the money; his permitting the orator to keep possession, and manage the land as he pleased, all show that it was a money transaction between them ;—in fact a loan by Lamson to the orator, the land being taken as security for the money loaned. The law is the same as it would have been, had other lands been taken as security. 1 *John. C. R.* 582, *Boyd* vs. *M'Lean ;*

2 *do.* 405, *Bottsford* vs. *Burr ;* 1 *Wendell* 625, *Malin* vs. *Malin.*

The testimony in regard to the purchase by the orator of the rights and parcels conveyed to Lamson is explicit. Lamson's declarations refer to and include the whole. That his declarations are admissible, is very clear. *Sugden* 445; 2 *P. Williams* 549, *exparte Vernon ;* 10 *Vesey* 549, *Lench* vs. *Lench ;* 1 *John. C. R.* 582; 1 *Dallas* 424; 3 *Binney* 303.

The law relating to equitable mortgages illustrates and fortifies the orator's claim to relief. In fact, if no such thing were known in law as a resulting trust, a court of equity would consider this as a case of mortgage. The orator placed the premises in Lamson's hands. He pledged them as security for money. He gave, and Lamson took, notes for the money. He kept possession of the lands, and paid interest and not rent. These facts are all indicia of a mortgage, and inconsistent with an absolute purchase by Lamson. *Sugden* 187, 188; 1 *Powell* 115, *note, and ibid.* 125, *no te ;* 4 *John.* 186, *Jackson* vs. *Green ;* 1 *Mod.* 517; 4 *John. C. R.* 167, *Strong* vs. *Stuart ;* 2 *Cowen* 324, *Clark* vs. *Henry ;* 8 *Wendell* 645, *Gilchrist* vs. *Cunningham.*

At the time of Lamson's death, and in 1829, when the legal estate was conveyed to the defendant, the orator had a clear equitable estate in the land, worth from $1200 to $1500. A court of equity will protect an equitable interest as much as a court of law will a legal estate. This is, in fact, its peculiar duty.

Has the orator ever parted with, or lost, his equitable interest?

He could be divested of it only in one of two ways: By releasing or conveying it himself, or by a conveyance of the legal estate by the trustee to a purchaser for a valuable consideration without notice. 1 *Saund.* 319; 1 *Cruise* 485; 3 *Atkins* 654; 3 *N. H. R.* 174, *Scoby* vs. *Blanchard.*

He has not released or conveyed it expressly or intentionally. He has received no consideration for it. Indeed, the testimony all shows that he intended not to part with it.

The conveyance to the defendant was not a sale, for the arrangement was made entirely by the trustees and the *cestui que trust*. The amount of the note given by the defendant was not regulated by the value of the land. That is proved to have been much greater. It was regulated by the amount due to the Lamsons. The defendant says the orator importuned him to take a deed of the land. The importunity could not have been to purchase the land at much less than its value, but to become the trustee of the orator. It was evidently the intent of the orator merely to change his trustee. This the defendant well knew, and this, and nothing else, was the effect of the transaction.

That the defendant had notice of the equitable interest of the orator, is apparent from the answer, and from the proofs in the case. The answer admits that the orator was in possession. This alone is sufficient notice. *5 N. H. R.* 181, *Hadduck* vs. *Wilmarth.*

But he had also actual notice. He admits that the orator informed him that the purchases were made by him, and that he gave notes to Lamson. He speaks of Lamson's claims on the estate, and says that the note he gave was for the sum which Lamson had paid, and the amount of some debts due to the heirs. 1 *John. C. R.* 288, 566 ; 9 *Cranch* 160 ; 5 *Peters* 110, 111 ; 2 *John. C. R.* 62, 89 ; 2 *Atkins* 383.

It is in proof that the defendant took the notes given by the orator to Lamson, or had them ; that he said to Lamson, junior, that he had held the title long enough ; that he applied to Lamson, junior, to assume the debts and let him off ; that he told Lamson that all the claim he had on the farm was for his wages and clothes, and to be set clear of the debts ; that he told Crandall that he had renewed the mortage, and had done so because he thought the farm worth more than the mortgage. Indeed, it is clear that he had notice of the claims his father had upon the land.

If the orator had had no equitable interest in the premises, and this agreement had been the only ground of a claim

to have relief, and the statute of frauds had been pleaded, it is not contended that relief could have been given. Such are not the circumstances presented by this case.

The defendant has been guilty of fraud, and upon that ground the orator asks relief.

It is evident from the testimony that the defendant received the deed of July, 1829, in trust; that he agreed to hold the land in trust, and that he was always well aware that the orator intended and expected that he would so hold it. He has perverted a conveyance, given and received for one purpose, to another purpose. *Roberts on Frauds* 102; 2 *Atkins* 254, *Young* vs. *Peachy*; 1 *Dallas* 424; 3 *Binney* 305; 4 *John. C. R.* 167.

All the parcels mentioned in the bill constitute but one farm. They have been treated alike, and as one farm, by both parties. They are mingled and incorporated together. It is evident that the defendant received the legal estate in all of them in trust. He treated the estate, up to the time of his marriage, as a trust estate. The orator so understood it, and was led to expend labor and money in improving the land. It would, therefore, be a fraud in the defendant to pervert deeds received for one purpose to another purpose.

*J. Wilson,* for the defendant.

The opinion of the court was drawn up by RICHARDSON, C. J. The plaintiff's claim in relation to some parts of the farm mentioned in the bill in this case, stands on very different grounds from his claim in relation to other parts; and the several grounds on which he claims several parts of the farm must be separately examined.

We shall consider, in the first place, the plaintiff's claim to that part of the farm which was conveyed to the defendant by the heirs of W. Lamson.

With respect to this part, it appears that the plaintiff, as early as the year 1821, and before he made any of the pur-

chases mentioned in the bill, was deeply involved in debt, and destitute of property. Indeed, he was unable to retain in his own hands any property that could in any way be attached by his creditors.

He, however, found in William Lamson a friend who was willing not only to let him purchase lands in his name, but to furnish him with funds to make the purchases; and who seems to have been an honest and upright man, ready to fulfil every trust and confidence which the plaintiff reposed in him.

It clearly appears, from the evidence in the case, that the understanding between the plaintiff and Lamson was, that the plaintiff should purchase such lands as might be convenient for a farm; that Lamson should advance the purchase money and take a deed of the lands in his own name; that Lamson, on being repaid the purchase money and interest, was to convey the lands to the plaintiff; and that in the mean time the plaintiff was to have the possession and produce of the land.

In pursuance of this understanding, the plaintiff bought in 1822 and afterwards, several tracts of land, which were conveyed to Lamson, and he advanced the purchase money. And the plaintiff went into the possession of the lands thus bought, and occupied them in the same manner he would have done had the legal title been in himself.

There seems to be no reason to doubt that Lamson took the plaintiff's notes for all the money he advanced for the lands.

The first question which arises in this part of the case, is, whether upon the conveyances thus made to W. Lamson, there was a resulting trust in favor of this plaintiff?

The second section of the statute of frauds enacts that all grants and assignments, and all declarations and creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such

trust, or by his last will in writing, or else they shall be utterly void and of no effect. *Provided always*, that where any conveyance shall be made of any lands, tenements or hereditaments, by which a trust or confidence shall arise or result by the implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as the same would have been if this act had not been made.

It is well settled, that when a man buys land and pays for the same with his own money, and then takes a deed in the name of another person, a trust results or arises by operation of law in favor of him who thus pays the purchase money ; and that such resulting trust is within the proviso in the second section of the statute of frauds. *Sugden's Law of Venders*, 414, 415.

It is not necessary, therefore, that the trust should appear on the face of deed, but it may be proved by parol evidence. But it is well settled, that the parol evidence must be clear and satisfactory. 3 *N. H. R.* 170, *Scoby* vs. *Blanchard ;* 7 *Dowling and Ryland* 141, *Doe* vs. *Statham ;* 3 *Mason* 362, *Powell* vs. *Monson ;* 8 *Green.* 379; 6 *Cowen* 726 ; 4 *N. H. R.* 397 ; 2 *John. C. R.* 405, *Botsford* vs. *Burr ;* 1 *John. C. R.* 582, *Boyd* vs. *M'Lean.*

And a resulting trust may be rebutted or discharged by parol evidence. 2 *John. C. R.* 416 ; *Sugden* 418.

It is essential, in order to bring a trust of this sort within the proviso of the statute, that it arise upon a conveyance of real estate. For the proviso is confined in express terms to trusts arising upon conveyances. Therefore, if A pay B for a tract of land, and B agree to hold the land in trust for A, in such a case the trust is not within the meaning of the proviso, because it is not a trust arising upon a conveyance. 16 *John.* 199, *Jackson* vs. *Seelye.*

It is also essential that the purchase money, when paid, should have been the money of him who sets up the trust.

If A take a conveyance of land in his own name from B, and pay the purchase money, and by a subsequent agreement receive the purchase money from C, and agree to hold the land in trust for C, this is not a trust within the proviso of the statute, because it is not a trust arising by the conveyance. 5 *John. C. R.* 1, *Steere* vs. *Steere;* 2 *do.* 405, *Botsford* vs. *Burr.*

The question, then, comes to this—Was the purchase money, paid for the lands conveyed to Lamson, the money of this plaintiff or the money of Lamson? If it was the money of Page, there was a resulting trust. But if otherwise, there was no resulting trust, and the plaintiff's claim in relation to those lands fails altogether.

In all the conveyances to W. Lamson, the purchase money is stated to have been paid by him; and there is nothing on the face of the deeds that indicates any trust. In such a case the rule is, that to raise a trust the evidence must be very clear and satisfactory. 1 *John. C. R.* 590; 10 *Vesey* 517. And that rule applies in all its force to this case; for not only are all the conveyances taken in Lamson's name, but he furnished all the purchase money.

But, upon a careful examination of the evidence, we think that it is clearly and satisfactorily proved that the money paid for these lands must be considered as the money of the plaintiff.

It is clearly proved that the plaintiff made all the purchases, and that he lived upon the lands, and occupied them as his own during the life of W. Lamson.

It is also clearly proved that W. Lamson repeatedly declared that the lands were purchased for this plaintiff, and that he was to have them when he should repay to Lamson the purchase money. During his last sickness W. Lamson told one of his sons that the lands were worth more than he had paid for them with interest; that the lands were made much more valuable by improvements made by this plaintiff; and that his (Lamson's) heirs were entitled to nothing more than the money paid and interest.

All this is not, however, sufficient in itself to show that the money paid for the lands was the money of this plaintiff. But taken in connection with the testimony to which we shall now advert, it shows very conclusively that the money advanced by Lamson to purchase the land, was a loan to Lewis Page, and to be considered as his money.

Elijah Parker says that W. Lamson, after the year 1822, had in his possession certain notes against Lewis Page, which he brought to the witness more than once, to have the interest cast, and said the notes were given for the purchase money of the farm now in controversy between these parties.

And several notes payable to W. Lamson are now produced, which have been proved to be signed by Lewis Page, this plaintiff. These notes were found among the papers of W. Lamson after his decease, and in their sums and dates correspond so nearly with the dates of, and the considerations mentioned in, the deeds of the lands to Lamson, as to leave no doubt that they were given for the money advanced by Lamson to pay for the lands.

This, with other testimony in the case, shows very clearly and satisfactorily, that the money advanced by W. Lamson to pay for the lands, was in truth loaned to Page, the plaintiff, and ought to be considered as his money ; and that upon the conveyances of the land to Lamson there was a resulting trust in favor of the plaintiff.

The case thus far is, in all its circumstances, the very case of *Boyd* vs. *M'Lean*, 1 *John. C. R.* 582.

The next question is, whether, under the circumstances of this case, the bill can be maintained with respect to these lands.

Considering the relation in which these parties stand to one another, it can hardly be doubted that the defendant had actual notice of the trust under which Lamson had held the land. But however that may be, as the plaintiff had long lived upon the land, and cultivated it as his own, this must

be considered as constructive notice, which is in law tanta-mount to actual notice.    4 *N. H. R.* 397, *Pritchard* vs. *Brown.*

If, then, the defendant, having such notice, had bought the land of the heirs of Lamson without the consent of the plaintiff, and had paid the full value of the land, the trust might have been enforced against him.    3 *N. H. R.* 174; 2 *Fonb.* 147 ; 1 *Saunders' Uses* 227 ; *Sugden* 484.

But this is not the case stated in the bill.    The plaintiff alleges in his bill that he made the agreement with the heirs of Lamson to convey the lands to the defendant.    And the defendant in his answer alleges that he took the convey-ance at the request of the plaintiff.    All was done by agree-ment between these parties.    The plaintiff had an opportu-nity to prescribe the terms upon which he would consent to the conveyance ; and there is no reason to suppose that the defendant could have obtained a conveyance without such assent.    He might relinquish any claim he had in the land in favor of the defendant, without any writing ; or he might insist that the defendant should hold the land on the same terms as Lamson had held it.

If he assented that the land should be conveyed to his son, without prescribing any terms upon which that assent was given, he must be presumed to have relinquished all his claim in favor of his son.    If he intended that his son should hold the land in trust, he was bound to disclose that intention to his son, that he might have an opportunity to decide whether he would take land upon those terms.    If he was silent on that subject before the conveyance was made to the son, it is hardly consistent with good faith and fair dealing now to set up the claim against the son.

But, having an equitable interest in the land, if he was induced to consent to the conveyance to the defendant by a promise on the part of the defendant to hold the land on the same terms as Lamson had held it ; as such a promise is within the statute of frauds, and not binding in law ; and

as the defendant now refuses to perform the promise, it may well be considered that the defendant originally intended to deceive and defraud the plaintiff, and that he induced the plaintiff to assent to the conveyance, by a promise never meant to be performed. And a trust will arise upon such a state of the facts, which we can compel the defendant to execute; for the statute of frauds was intended to prevent, and not to aid, fraud. *Cooper's Pl.* 257, 258; 9 *Vesey* 516, *Strickland* vs. *Aldridge; Mitford's Pl.* $\frac{327}{266}$; 4 *John. C. R.* 167, *Strong* vs. *Stewart;* 1 *Dallas* 424, *Thomson* vs. *White;* 3 *Binney* 302.

The only remaining question on this part of the case is, whether a promise on the part of the defendant to hold the land in trust, made to the plaintiff before he assented to the conveyance under which the defendant holds the land, is satisfactorily proved?

The defendant, in his answer, denies directly and positively that there was any promise or agreement whatever on his part to hold the land on any trust.

It was, probably, the expectation of both parties that the plaintiff should have a home upon the farm; and for some time after the conveyance to the defendant the parties lived together upon the place, and managed their concerns just as a father and son would be expected to do under the circumstances.

But at length a misunderstanding arose between them. The father had no property. It appears, from the evidence in the case, that the son had just arrived at the age of 21 years, and was also destitute of property. He had incurred a heavy debt in making the purchase; and when he married, and there were two families to be maintained upon the produce of the farm, it appears that he began to complain that they were going behind hand, and wished to be rid of the farm. The father made proposals to the son to take the farm on certain terms. The son made proposals to convey the farm to the father on certain other terms. But they

could not agree. There was much conversation between them upon this subject, in the presence of their mutual friends, whose testimony is in the case. Now if there were an agreement on the part of the son to hold the land on the same terms upon which Lamson had held, we should naturally expect that the father, in some of those various conversations, would have insisted upon the performance of that agreement. But there is no witness whatever, on either side, who says that in any one of those conversations the defendant ever admitted, or that the plaintiff ever pretended that there was such an agreement.

Nor is there any other satisfactory evidence in the case to prove that the defendant ever agreed to take the conveyance upon any trust whatever. Indeed, there is no reasonable ground even to suspect that there could have been in the transaction any other trust than the trust of a father in the affection of his son.

I am, therefore, of opinion, that with respect to that part of the farm which was conveyed to the defendant by the heirs of W. Lamson, the plaintiff has shown no claim that can be enforced upon this bill. The plaintiff has failed entirely in showing any trust. Where the facts charged in a bill are fully denied by the answer, there can be no decree against the answer, on the evidence of a single witness, only without corroborating circumstances to supply the place of a second witness. 1 *John. C. R.* 459, *Smith* vs. *Brush;* 2 *Vesey, Jr.,* 244, *Mortimer* vs. *Orchard ;* 18 *do.* 12 *and* 335.

The evidence introduced by the plaintiff is much too slight and unsatisfactory to prevail against the answer of the defendant.

We shall, in the next place, consider the plaintiff's claim to that part of the farm which was conveyed to the defendant by Ebenezer Cheney.

With respect to this part of the farm, it appears that the plaintiff, in the year 1826, agreed with Perry and Wood to purchase the land of them ; that they, on the 26th August,

that year, conveyed the land to Cheney ; that W. Lamson, at the plaintiff's request, advanced the purchase money and took Cheney's note, with a mortgage of the land, to secure the payment of it, and that the plaintiff placed in Cheney's hands a promissory note of a third person as his security for giving the note to Lamson.   After Lamson's decease the defendant paid to his executors the note thus given by Cheney, who at the request of the plaintiff conveyed the land to the defendant.   The bill of the plaintiff alleges that the defendant, when he took the conveyance from Cheney, agreed to hold the land upon the same trusts as Cheney had held it.

If, then, there was a resulting trust in favor of the plaintiff upon the conveyance of this land by Perry and Wood to Cheney, this part of the farm stands on the same ground as that part of the farm which was conveyed by Lamson to the defendant; and in order to maintain his bill with respect to this land, the plaintiff must show that he was induced to consent to the conveyance of the land by Cheney to the defendant by the defendant's promise to hold the land in trust. But here again the plaintiff wholly fails in his proof.   There is no evidence of any such agreement on the part of the defendant.

Another part of the farm mentioned in the bill was conveyed to the defendant by Charles Chase, in 1832.   The plaintiff alleges in his bill that he purchased this land and took a deed in the name of the defendant, who agreed to hold the land in trust for the plaintiff.

It appears in evidence that the plaintiff made the contract with Chase for the purchase of this land.   But the deed was taken in the name of the defendant, and he paid the purchase money.   There is no evidence in the case of any agreement on the part of the defendant to loan to the plaintiff the money which was paid for this land, or to hold the land in trust for the plaintiff.   It must, then, be presumed that the plaintiff in making the contract acted as the agent

of the defendant. He has thus failed in his proof to show that he ever had any claim, either legal or equitable, to this part of the farm.

The bill states that the plaintiff, on the 30th April, 1832, purchased of Enoch Woods a small tract of land, and paid the purchase money, and took a deed in the name of the defendant.

The defendant in his answer alleges that he employed the plaintiff to procure the deed, and furnished the purchase money.

Woods says that the plaintiff made the purchase, for which he paid $12,50, and that a deed was taken in the name of the defendant.

The consideration of the conveyance is stated in the deed to have been paid by the defendant.

There is no evidence to prove that the money with which this land was bought was the plaintiff's, except that it was paid over to Woods by him. And in a case like this, where the consideration is stated in the deed to have been paid by the grantee, the proof ought to be very clear and satisfactory that the money belonged to him who sets up the trust, in order to raise a resulting trust in his favor. I am inclined to think that all the circumstances disclosed render it quite as probable that the money belonged to the son as to the father. But there can be no decree against the answer, without more proof. 1 *John. C. R.* 459. But however that may be, the general rule is that if a father make a purchase in the name of a son, even though the son be illegitimate, it will not be deemed a resulting trust, but an advancement. *Sugden* 420 ; 2 *Fonb.* 121 ; 2 *John. C. R.* 540.

But there are exceptions to this rule. Here the father was poor and unable to make advancements. It must, however, be remembered on the other hand that he was deeply in debt, and unable to keep any property in his own possession. The plaintiff's only hope of having a home in his old age seems to have been placed in the advancement of

this defendant, his son. And considering all the circumstances of this case ; how very small the tract of land ; how very trifling the sum paid for it, and the situation of the parties, I am of opinion that if it were clearly proved that the purchase money belonged to the plaintiff, the general rule must be applied, and the purchase be considered not as a resulting trust for the plaintiff, but as a gift, or advancement for the defendant.

*Bill dismissed.*