## GOVE v. LAWRENCE.

In order to render void a bankrupt certificate, by reason of the fraudulent conveyance of property, it must appear that the conveyance was made in contemplation of bankruptcy. Accordingly, where property was conveyed two years before the passage of the bankrupt act, for the purpose of preventing an attachment of the same on a debt due at the time of the conveyance—*Held*, that such a conveyance could not be regarded as having been made in contemplation of bankruptcy, and could not invalidate the bankrupt's discharge.

Where a conveyance is made to A., but the consideration for the same is paid by B. at the time, there is a resulting trust created in favor of the latter; and B. having, in his schedule of property, on applying for the benefit of the bankrupt act, described his interest in the land as an equitable one—*Held*, that the interest was correctly set forth.

DEBT, on a bond, dated January 30th, 1836, in the penal sum of $1000, to be paid to the plaintiff or his assigns, and signed by the defendant and Joseph and William Bennett. The condition of the bond was that the obligors should make and execute a good and sufficient warrantee deed, of two-thirds of a certain lot of land, situated in Sandwich, in common form, to be by them executed and acknowledged within five years from the date of the bond, and duly delivered to the plaintiff, his heirs or assigns; provided that the plaintiff, his heirs and assigns, shall first, within five years from the date, pay the obligors, their heirs or assigns, the sum of $300.

On the back of the bond was a due acknowledgment by the obligors, by them signed, of the receipt of the $300, from the plaintiff.

The defendant, Lawrence, duly pleaded his discharge in bankruptcy, obtained on the 16th of November, 1842, upon a petition filed the 13th of June, 1842.

The plaintiff replied fraud in obtaining the certificate of discharge, and set forth the grounds upon which he founded the charge.

The action was referred to three referees, who made a re-

port, in substance, as follows: That having heard the parties, and considered their proofs and allegations, they award, order and determine, that Lawrence recover of Gove cost of reference, taxed at $63.29, and costs of court, to be taxed by the court, unless Gove should in law be entitled to recover of Lawrence upon the following facts.

On the 13th of June, 1842, Lawrence was an inhabitant and resident of Hart's Location, in the county of Coos, and on that day filed in the district court of the United States for the district of New Hampshire, his petition in due form, praying to be discharged in full from all his debts, and for a certificate of his discharge, pursuant to the act of Congress to establish a uniform system of bankruptcy throughout the United States, passed August 19, 1841, and such proceedings were had thereon that on the 16th of November, 1842, it was ordered and decreed by the court that Lawrence be fully discharged of and from all his debts, owing by him at the time of the presentation of his petition, and the court then and there granted him a certificate of his discharge.

Lawrence, in his schedule of property in his petition in bankruptcy, made the following entry : " My interest, being an equitable one, in the Hanson lot, so called, on which I live in Hart's Location, in the county of Coos, $500."

Sometime in the year 1839, Lawrence purchased of one Shadrach Folsom the tract of land described in said schedule, and paid him therefor $500, and at the same time Folsom, by his deed in due form, conveyed said tract of land to one William Towle, his heirs and assigns, and Towle never reconveyed the same to Lawrence, or for his benefit.

Lawrence, Joseph Bennett and William Bennett, the obligors in the bond in suit, signed a note in 1835 for $1500, payable to one Paul Woodman, and interest; and during the same year they signed another note for $1600, payable to one Andrew Pease; and on the 30th day of January, 1836, they executed and delivered to Gove the bond declared on in this action. The bond was provable under the pro-

ceedings in bankruptcy.    The writ in this action was dated
November 4th, 1850.

The referees further reported that said tract of land was
conveyed to Towle for the express purpose, and no other, of
preventing it being attached by Pease to secure the pay-
ment of the note given to him, and to keep the land from
Pease.    The note to Pease has never been paid.    The note
to Woodman was paid sometime in 1840, from the property
of the Bennetts.    If Gove is entitled to recover upon the
foregoing facts, the referees award, order and determine that
he recover of Lawrence the sum of $245.44, and cost of
reference, taxed at $65.42, and costs of court, to be taxed by
the court.

The questions arising upon the report were transferred to
this court for determination.

*Dearborn*, with whom was *Hall*, for the plaintiff.

The purchase of the land by Lawrence, and taking. a
deed of the same in the name of Towle, for the purpose of
preventing its being attached by the creditors of Lawrence,
is a fraud against the creditors.    It is an attempt to place
the property beyond the reach of legal process in order to
defeat creditors ; and this is a fraud against which equity
should give relief.    *Everett* v. *Read*, 3 N. H. Rep. 55 ; 11
N. H. Rep. 316.

Fraud is an extrinsic, collateral act, which vitiates all
transactions, even the solemn proceedings of courts of jus-
tice.    Lord Coke says it avoids all judicial acts.    2 Stark.
Ev. 587.

It can therefore make no difference whether the act of
fraud was committed in contemplation of bankruptcy or
not, if at the time of taking the deed in the name of Towle,
there existed in the mind of Lawrence an intention to hin-
der, delay and defraud creditors, within the meaning of 13
Eliz. c. 5, and 27 Eliz. c. 4, which acts have been adopted as
part of our common law.    It is sufficient to avoid Law-

rence's certificate. 4 Kent's Com. 302; 1 Johns. Rep. 45; 3 Johns. Rep. 215; 11 Johns. Rep. 91; 8 N. H. Rep. 187.

In answer to evidence of a certificate, the plaintiff may show that it was obtained unfairly and by fraud. 2 Stark. Ev. 206.

Under the fourth section of the bankrupt act, a bankrupt was not entitled to a discharge or certificate if he were guilty of any fraud or wilful concealment of his property or rights of property. And under the same section the certificate is made a complete discharge, unless the same shall be impeached for some fraud or wilful concealment by him of his property or rights of property. Under the first section of the act, he is to give an accurate inventory of his property, rights and credits of every name, kind and description, and the location and situation of each and every portion and parcel thereof, verified by oath. An inventory verified by oath, according to his "best knowledge and belief," would not answer the requirements of the section. It must be not only an exact inventory of all his property and rights of property, but an exact description, as well of the situation as the location of the same.

These requirements the defendant failed to comply with, he possessing in law not only an equitable interest in the land, but the legal estate which was vested in him by operation of law; the law transferring the use into the possession by turning the interest of the *cestui que use* into a legal estate. It was an executed trust, and any disposition of the land by the *cestui que trust* by devise or otherwise, would have been binding upon the trustee. 4 Kent's Com. 288, 297, 300; 2 Black. Com. 333.

Lawrence's description of his interest in and right of property to the land was not sufficiently exact to answer the requirements of the bankrupt law, and not being exact, whether through mistake or otherwise, it is sufficient to avoid his certificate; the requirements of the bankrupt law

being unqualified in this respect, and making no exception whatever, either in favor of mistakes or otherwise.

This is within the statute of uses which transfers the use into possession, thereby making the *cestui que use* complete owner of the lands and tenements, as well at law as in equity. 2 Com. Dig. C. 20. And since the statute of frauds, 27 Car. II., the courts consider a trust estate, either when expressly declared or resulting by implication of law, as equivalent to the legal ownership, and governed by the same rules of property. The trustee is considered merely as the instrument of conveyance, and can in no shape affect the estate, unless by an alienation to a purchaser without notice, which can rarely happen. The trust will descend, may be aliened, is liable to debts and forfeitures, and is to all intents and purposes an estate at law. 2 P. Wms. Rep. 640.

This is an executed use, not an executory use, and the *cestui que use* being in possession of the estate, everything necessary to perfect in him the legal title, under the statute, has been done. The doctrine of the *New Parish in Exeter* v. *Odiorne*, 1 N. H. Rep. 232, and of *Scoby* v. *Blanchard*, 3 N. H. Rep. 170, is not in conflict with our views. And *Pritchard* v. *Brown*, 4 N. H. Rep. 397, and *Page* v. *Page*, 8 N. H. Rep. 187, decide nothing which is in question here.

The taking the deed of the land in the name of Towle, in trust for Lawrence, for the purpose of defrauding creditors, was a fraud which, existing at the time of Lawrence's discharge, is sufficient to avoid his certificate.

The inventory of the land was not sufficiently accurate to answer the requirements of the bankrupt act; and not being accurate, it is a good and sufficient reason to avoid the discharge, being a concealment of property, or rights of property, and of the true situation of the same, within the meaning of the act.

*L. D. Sawyer*, for the defendant.

In reply to the points stated by the plaintiff's counsel, we contend:—

1.   That the conveyance from Folsom to Towle was not a fraud, within the meaning or ·provisions of the bankrupt act.    It was not made after the passage of the act, or in contemplation of bankruptcy.    The objection, if·made at all, should have been made in the United States district court, to prevent a discharge, which, having been regularly obtained, cannot thus be avoided.    Bankrupt act § 2.

2.   The defendant did all he was required to do under the bankrupt act.    He set forth, under oath, according to his best knowledge and belief, in his schedule, an accurate inventory of his property, rights and credits of every name, kind and description, and the location and situation of the same.    It does not avoid his discharge if the description, by his mistake, or that of the attorney who made the schedule, was not technically, legally accurate.    The bankrupt act requires no such accuracy.    Bankrupt act §§ 1, 2.

3.   The defendant's estate or interest in the property was accurately described in a technical legal sense.    Although the statute of uses, 27th Henry VIII. may have been adopted in this State, yet this conveyance does not come within its provisions.    The conveyance created a resulting trust or· executory use, in which the trustee had the legal title, and the *cestui que trust* the equitable interest.    *New Parish in Exeter* v. *Odiorne*, 1 N. H. Rep. 237; *Scoby* v. *Blanchard*, 3 N. H. Rep. 170; *Pritchard* v. *Brown*, 4 N. H. Rep. 397 ; *Page* v. *Page*, 8 N. H. Rep. 187.

*Hobbs & Sanborn*, on the same side.

Lawrence was fully discharged from his liability on the bond in suit by his discharge in bankruptcy.    U. S. Statutes at large, chap. 19 §§ 2, 3 and 4.

EASTMAN, J.    If the land conveyed to Towle had been attached as the property of Lawrence, upon a valid debt

existing against him at the time of the attachment, a very different question would be presented from the one raised by this case.

That fraudulent conveyances are void as to creditors is not a matter open to argument. *Towle* v. *Hoit*, 14 N. H. Rep. 61; *Carlisle* v. *Rich*, 8 N. H. Rep. 44; 2 Kent's Com. 442; *Paul* v. *Crooker*, 8 N. H. Rep. 290; *Jackson* v. *Myers*, 18 Johns. Rep. 425; *McConihe* v. *Sawyer*, 12 N. H. Rep. 396; *Smith* v. *Lowell*, 6 N. H. Rep. 67; *Kendall* v. *Fitts*, 2 Foster's Rep. 1.

If the fraud be corruptly intended, the conveyance is not only void as to creditors whose debts exist at the time of the sale and transfer, but also as to all who may subsequently become creditors; and had Gove attached this land, as he could have done, prior to the proceedings in bankruptcy, by Lawrence, it might have availed him for the satisfaction of the bond. *Kittredge* v. *Warren*, 14 N. H. Rep. 509; *Kittredge* v. *Emerson*, 15 N. H. Rep. 227.

But it is unnecessary to investigate the nature of the conveyance from Folsom to Towle any farther than to ascertain its effect upon the bankrupt certificate of Lawrence. The bond being provable under the proceedings in bankruptcy, the question is, was it discharged by those proceedings? If it was, then this action cannot be maintained; but if not, then it can be.

It is not suggested that the effect of the certificate can be avoided, unless it be on account of the conveyance of the land to Towle instead of Lawrence, or from a failure by Lawrence to make a correct schedule of the property.

The referees find that the conveyance was made in 1839, and that the deed was made to Towle instead of Lawrence, expressly to avoid an attachment of the land by Pease, on a debt created in 1836. The bankrupt act was passed August 19th, 1841, and went into effect February 1, 1842. The second section of the act provides, among other things, that all future payments, securities, conveyances or transfers of

property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt; and all other payments, securities, conveyances or transfers of property, or agreements made or given by such bankrupt, in contemplation of bankruptcy, to any person or persons whatever, not being a *bona fide* creditor or purchaser, for a valuable consideration, without notice, shall be deemed utterly void and a fraud upon this act.

Now if we can hold this conveyance to have been made in contemplation of taking the benefit of the bankrupt act, it will render void the certificate; but not otherwise. The act of Congress evidently looks to the transactions of the bankrupt, both in regard to his acts in becoming a bankrupt and to his proceedings in obtaining a certificate of discharge. It does not require an examination into the business of a whole life, and provide that every indiscretion, or fraud even, shall prevent an applicant from obtaining the benefits of the act. If the petitioner shall have taken no fraudulent steps in contemplation of bankruptcy, and shall honestly and legally comply with the requirements of the act in obtaining his discharge, it is all the law contemplates. And it seems to us quite clear that this conveyance in 1839, made two years before the passage of the bankrupt act, and when no act of the kind was in existence, and made, too, expressly for the purpose, and no other, of defeating an attachment on a debt created in 1836, cannot be regarded as having been made in contemplation of bankruptcy. Nothing is disclosed which has a tendency to any such result, or which can lead us to any such conclusion. The provisions of the fourth section of the bankrupt act, referred to by counsel, relate to frauds and concealments contrary to the provisions of the act, and not to frauds generally, as stated in the argument.

Nor do we think that any well founded objection can be

raised to the sufficiency of the certificate, on account of the schedule of the property. In our opinion the description in the schedule was as correct as it well could be. The interest which Lawrence had in the land was an equitable one. It is true that he had no legal title or deed of the land, and in fact no evidence of title whatever; but at the same time he had paid the full consideration for the property; and where an estate is conveyed to one and the consideration is paid by another, a resulting trust is created in favor of the latter, and he is the equitable owner. 4 Kent's Com. 305; *Gardiner Bank* v. *Wheaton,* 8 Greenl. Rep. 373; *Jackson* v. *Matsford,* 11 Johns. Rep. 90; *Botsford* v. *Burr,* 2 Johns. Ch. Rep. 405; *Powell* v. *Monson,* 3 Mason's Rep. 347; *Jackson* v. *Moore,* 6 Cowen's Rep. 726; *Page* v. *Page,* 8 N. H. Rep. 187; *Jackson* v. *Morse,* 16 Johns. Rep. 197; *Pembroke* v. *Allenstown,* 1 Foster's Rep. 107.

There is no doubt that the interest which Lawrence had in the property could have been taken by his creditors for his debts; neither can there be any doubt that his assignee could sell such an interest, and that it would pass by the sale.

As the discharge in bankruptcy cannot be invalidated by this conveyance, or by any inaccuracy in the schedule, the bond upon which the suit was instituted being provable in bankruptcy, was discharged by the bankrupt proceedings, and, of course, the plaintiff having no cause of action, the suit must fail.

*Judgment for the defendant, upon the report.*