# SULLIVAN,

## DECEMBER TERM, A. D. 1843.

---

## BROOKS *vs.* FOWLE & a.

A warrantor of title, having no interest in land except by his warranty, *it seems,* cannot singly maintain a bill for quieting possession of the land by an injunction, and which seeks nothing more.

But where other relief is sought, and an account is to be stated between the warrantor and the party defendant, or on a bill by his grantee for the purpose of quieting possession, the warrantor is a necessary party.

But if he bring his bill of complaint singly, asking, not for a bare injunction, but also for an account and general relief, if no objection be taken in the early stage of the proceedings, nor any suggestion made that the interests of his grantee in possession require him to be made a party, it is not the duty of the court to delay the cause on that account.

Where two have real estate set off to them jointly, the possession of one, claiming the whole, cannot be construed as adverse to the other, within the meaning of the statute of limitations.

A purchase of real estate completed on the credit of two, and afterwards paid for wholly by one of them, does not, of itself, give rise to a resulting trust.

One E, finding himself insolvent, gave to his sureties, on a guardian's bond, a note for the deficiency in his guardian account; they sued the note and obtained judgment and partial satisfaction, by levying on real estate and having it set off to them jointly. After the levy, &c., one of the sureties, B, paid the deficiency in the guardian's account.—*Held*, that up to the time of that payment there existed a resulting trust in favor of E, the principal.

*Held*, also, that upon the payment by B, a new trust arose in favor of the sureties themselves, in the proportions in which they had contributed towards the deficiency, and the necessary expenses and taxes.

The right to insist upon this trust is not barred by the lapse of time, which bars the action for contribution.

The facts necessary to establish the trust may be shown by parol evidence.

B, who paid the deficiency, continuing in possession of the whole estate in person or by his grantee, may have an injunction against the executors of his co-surety, to restrain them from selling their testator's legal estate in the premises, unless they shall have accounted with B, on such terms as the court may direct.

IN EQUITY. The bill stated that on or about March 6,

1815, one Dearbon Emerson, of Groton, Massachusetts, was duly appointed by the probate court in Middlesex county the guardian of one Harriet E. Newman, a minor under fourteen, and that the plaintiff, Daniel Brooks, and David Childs, as sureties, executed a bond to the judge of probate for Middlesex, conditioned for the faithful discharge and performance of the office of guardian, by their principal, Emerson. That having learned afterwards that Emerson had become insolvent, on the 28th of November, 1817, they called on him for an indemnity as to said bond, but could obtain only his note for $400, which was the amount, as then ascertained, which would be the deficiency in his guardianship account. He rendered his account to the probate court May 24, 1819, and was found to be indebted to his ward in that sum, for which the plaintiff and Childs became liable on their bond, Emerson continuing to be insolvent. Learning that Emerson had real estate in Stoddard, New-Hampshire, they attached the same, and having recovered judgment in the common pleas, on said note, March 24th, 1819, for $431.60, and $12.27 costs, they levied on said land, which was appraised and set off to them at $343, in part satisfaction of their execution. After Harriet E. Newman had arrived at the age of fourteen, she chose the plaintiff for her guardian, and he was appointed in due course, and took upon himself the discharge of the duties, about June 14, 1819. Upon the appraisement of the ward's property, June 25, 1819, the sum of $400 was found due from Emerson, and the plaintiff, as guardian, was made chargeable with the same. He rendered his guardian's account, October 16, 1823, into the probate court, and there was found due from him to the ward $287, the said charge of $400 against him having been included in that settlement. October 16, 1823, the ward then being of full age, the orator paid the $287 to her, in full discharge of his guardianship account and all liabilities on said bond.

The bill then states that the land set off to the orator and

Childs was not redeemed, but the title became absolute; and that Childs never paid any part of said sum of $400, due from Emerson, though frequently called upon by the plaintiff to contribute his proportion of the difference between the judgment and the appraised value of the land, and the other expenses, although he frequently promised to contribute.

The bill next states that, May 2, 1822, the plaintiff sold and conveyed said land to one Samuel Gerould, Jr., by warranty deed, in the covenants of which he is interested, the said Childs promising and agreeing to execute a deed of all his interest in the same; which promise he never performed; and well knowing that he had no equitable interest in the same, never, during his lifetime, made any demand, claim or title to the same, nor to the proceeds of the sale thereof. Childs died in August, 1839, leaving a will, in which Joshua B. Fowle, of Shirley, and Charles Woolly, of Groton, (the present defendants,) were named executors. They proved the will, in Massachusetts, and in April, 1840, filed and recorded the same in the county of Cheshire, New-Hampshire, and undertook the execution of the same. And now, in course of the administration of the said estate in New-Hampshire, they make a claim to an undivided half of said land, as part of Childs' estate; and have procured a license for the sale of the same, describing it as the same set off to said Childs and Daniel Brooks, April 20, 1819, on an execution against Dearbon Emerson; of which sale they have given public notice. The bill charges that this has been done by the executors with knowledge that Childs had no equitable interest in the premises, after the settlement of the guardianship account and the payment to the ward. It states also applications made by the plaintiff and his agents to the defendants to forbear, and to account for Childs' proportion of the amount of expenses, over and above the appraised value of the land, and their refusal; they sometimes pretending that Childs had a valid claim to one half the estate, founded

upon the payment of a good and valuable consideration, and to sell the same.

The bill then proceeds to interrogate specially the defendants as to various matters which will sufficiently appear in the abstract of their answers.

The bill concludes with a prayer that the defendants may be restrained from selling the premises, and they, and all others claiming under Childs, injoined from claiming or enjoying the same, and be deemed to acquit and relinquish all such title and interest to the plaintiff, and also that an account be taken of what is due him in relation thereto, and for general relief in the matters set forth.

A temporary injunction against the sale was granted on the filing of the bill.

The answers of the defendants, in substance, admit that Childs and Brooks gave their bond, as stated in the bill, as sureties of Emerson, and also received his note for $400 ; but whether it was given wholly as an indemnity, the defendants do not know ; nor do they know of Brooks' settlement with the judge of probate, nor what sum he paid to Harriet E. Newman, nor whether Childs did or did not pay any part of it. The defendants do know of the suit on the $400 note, and the judgment, and the setting off of the land in question, and they believe that it has never been redeemed. They do not know that Childs was ever called on by Brooks to contribute, nor that he promised to do so, or to execute a deed, as stated in the bill; but they do know that Childs claimed to be the owner of one undivided half of the land, and frequently spoke of his claim. They believe that Brooks was appointed guardian, as stated by the bill.

The answers admit the death of Childs in October, 1838, the proof of the will, the license to sell, and notice of sale for July 9, 1841.

The answers deny any knowledge that Childs had no equitable claim to the land ; finding a legal title to half the land, they supposed it to be their duty to sell it. Neither of

the defendants have paid Brooks anything since the death of Childs, nor do they know what Childs paid in his life time. Since his death, Brooks has made claim for a sum as due from Childs' estate, but the commissioner refused to allow it. The defendants never promised Brooks to pay the claim, nor could they do so unless it was allowed by the commissioner, the estate being insolvent. Soon after Childs' death, and when the defendants supposed the estate to be solvent, the defendant, Woolly, supposing he should receive a large amount of property as residuary legatee, did attempt a settlement with the plaintiff, which, however, was not effected. Since that time, the estate having proved insolvent, the defendants have supposed they could not settle, but must go on and do their duty to the creditors.

The evidence in the case shewed the facts in relation to the former guardianship of Emerson, his insolvency, the giving of the note, and its partial satisfaction by levy on the land in Stoddard, substantially as stated in the bill ; also, the appointment of the plaintiff as guardian, and that, as guardian, he was charged with the $400 deficiency.

The plaintiff settled with his ward after she became of age, and paid her the balance, taking the following receipt :

"Boston, October 16, 1823.  Received of Daniel Brooks two hundred and eighty-seven dollars, in full for money received as guardian for me, and this shall be discharge from me, and request the judge of probate to discharge the same as settled.                    Harriet E. Newman."

It was also proved that the expenses of the attachment and suit on the $400 note were paid by Brooks, in the first instance at least, and there was no evidence of Childs' having at any time contributed thereto, although the bills were made to Brooks and Childs jointly.

The defendants produced, and put into the case, three receipts, as follows :

"Received of David Childs and Daniel Brooks, by the hand of Joshuay Reed, eleven dollars, for taxes and cost on

Brooks *v.* Fowle.

land taxed to Emerson and Peabody, which is lots No. 10 & 11, in the 12th range, 119 acres, for the year 1819, which was sould Sept'r 5, 1818, and redeemed August 25, 1819.

Joel Wilson, Collector."

"Stoddard, December 11th, 1819. Rec'd of Emerson & Peabody, by the hands of Job Brooks, four and fifteen cents in full for tax, and eighty-six cents for the cost of advertising on lots No. 10 & 11, in the 12th range in the town of Stoddard, for the year 1819, in my hands to collect.

Francis Matson, Collector."

"Rec'd of Emerson & Peaboda, by the hands of Mr. Job Brooks, $5.12 for the tax on Lots No. 10 & 11, in the 12th range in the town of Stoddard, for the year 1820, in my hands to collect.　　Francis Matson, Collector.

Sept. 11th, 1820. $5.12."

Endorsed on the last receipt is the following: "Groton, Sept. 20, 1820. Rec'd the within mentioned sum of David Child, for the taxes on s'd land, and paid over to T. collector.

Job Brooks."

Also the following: "Paid J. Brook 9 for going to pay the money."

*Leland,* (with whom was *H. Hubbard,*) for the plaintiff. All the material statements in the bill are supplied by the proof. This real estate was set off on execution in favor of Brooks and Childs, on a demand due to Brooks alone, and Childs had the legal title of an undivided half, in trust for Brooks. The executors of Childs now claim the same as belonging to his estate, and the bill is brought to restrain them from the sale, and to procure a conveyance to Brooks.

This is a resulting trust, or a trust raised by operation of law, and enures to the benefit of Brooks, and can be shewn by vocal evidence, and is not within the statute of frauds. 4 *N. H. Rep.* 397, *Pritchard* vs. *Brown;* 3 *Ditto* 170, *Scoby* vs. *Blanchard;* 3 *Mason* 347, *Powell* vs. *The Monson & Brimfield Manf. Co.*

When the purchase is made in the name of one person, and the purchase money paid by another, there is a resulting trust in favor of him who made the payment. 1 *Johns. Ch. R.* 582, *Boyd* vs. *McLean ;* 2 *Ditto* 405, *Botsford* vs. *Burr ;* 2 *Black. R.* 198, *Elliot* vs. *Armstrong ; Fonb. Eq.,* b. 2, *ch.* 5, § 1, *note.*

This case may correctly be said to be a case of principal and surety. Harriet E. Newman is the principal creditor in the bond, and Brooks and Childs sureties. The law is clearly settled in such cases, that, by the surety paying the creditor, such surety stands in the place of the creditor as to all the securities, funds, liens and equities which he may have against the personal property. 4 *Johns. Ch. R.* 129, *Hayes* vs. *Ward ;* 1 *Story Eq.* 478, 588 *to* 593 ; 3 *Paige R.* 614; 2 *B. & H. Dig.* 410, *No.* 16 ; *Ditto* 398, *Nos.* 42, 54, 65. And when a deed of indemnity is given to some of the sureties, it enures to all who have been made liable. 2 *B. & H. Dig.* 398, *No.* 50. Childs was a party in this levy, and, by operation of law, became legally seized in trust for Brooks, being a mere naked trust, coupled with no interest whatever. He and his executors could exercise no rights over the estate. 5 *N. H. Rep.* 108, *Foster* vs. *Huntington ;* 4 *Mass. R.* 598, *Boylston* vs. *Carver ;* 5 *Ditto* 240, *Willard* vs. *Nason.* .

Such a trust was created without the aid of the statute. *See N. H. Laws* 335, § 8.

Courts of equity have power over such trusts, will see them executed, and will compel the trustee to relinquish his trust and order a re-conveyance, if necessary, or restrain the trustee from sale. 2 *Story's Eq.* 224, 954; *Fonb. Eq.,* b. 1, *ch.* 1, § 8, *note ;* 2 *B. & H. Dig.* 499, *Nos.* 24, 31 ; *Ditto* 500, *No.* 3 ; 1 *Russell & Mylne* 634, *Watts* vs. *Turner ;* 4 *Cond. Ch. R.* 591 ; 1 *Maddock Ch. R.* 187 ; 4 *Johns. Ch.* 85 ; *Theobald* 301.

This court will never permit the estate of Childs to hold the estate without compensating Brooks for what he has

paid out for Childs, and the statute of limitations is no bar to the trust.

Equity will not permit so inequitable a claim to stand. Its province is to do justice, and the common maxim is, he who seeks equity must do equity; and it would be against conscience that Childs' executor should claim this property without paying any thing. 1 *Story's Eq.*, § 300, 301; *Fonb. Eq.*, b. 1, ch. 1, § 3, *note h, p.* 41.

But Brooks and his assigns had been in the adverse, quiet, and peaceable possession of the whole of the premises, claiming title thereto, for more than twenty years before Childs or his executor made claim to the same. The title, therefore, is good, and this court can and ought to quiet the plaintiff in the possession, by a perpetual injunction. See *Story's Eq.*, § 954, 955; 1 *Madd. Ch.* 1345; 4 *Johns. Ch. R.* 53, *Varick* vs. *The City of New-York.*

After the right of redeeming from the sale on execution had expired, Brooks and Childs became tenants in common, and as such they hold in proportion to what they have paid out, and not otherwise. 11 *Mass.* 469, *Goodwin* vs. *Richardson; Sugden* 406; 7 *Fonb. Eq.*, b. 2, ch. 4, § 3, *note* 103; 3 *P. Wms.* 138; 2 *Pick. R.* 617, *Donnels* vs. *Edwards.* This is not a title by deed, in which the interest of each tenant is expressed, but it is a title acquired by operation of law, securing to each a share, in proportion to the amount advanced. The case is substantially the same as if Emerson had mortgaged the premises by way of indemnity to Brooks and Childs, his sureties, and they had been compelled to foreclose, Brooks having paid up Emerson's deficiency. Brooks would then have had an absolute fee in one half, and an equitable lien on the other for Childs' quota of the sum paid on Emerson's account. The case of *Lake* vs. *Craddock*, 3 *P. Wms.* 158, fully sustains this principle. 4 *Johns. Ch. R.* 334, *Campbell* vs. *Mesier;* 4 *Hawk. R.* 358; 2 *B. & H. Dig.* 412, *Nos.* 4 *and* 5. See, also, analogous cases in 1 *Eq. Cases* 291, *Lake* vs. *Gibson; Sugden*

407; *Fonb. Eq.*, *b.* 2, *ch.* 4, § 3, *note w*, 3. And the principle of substitution applies. 4 *Johns. Ch. R. 545, Lawrence* vs. *Cornell;* 3 *Leigh* 272, *Watts* vs. *Kinney;* 2 *B. & H. Dig.* 395, *No.* 19; *Ditto* 411, *No.* 7; 2 *H. & Gill* 305, *Waters* vs. *Riley;* 1 *Johns. Ch. R.* 409; 4 *Ditto* 530, *Scribner* vs. *Hickock;* 6 *Ditto* 21, *Campbell* vs. *Mesier.*

*Handerson,* for the defendants. The material facts are, that, many years ago, Brooks and Childs being sureties of Emerson, it came to be understood that they would be liable to the ward for $400; whereupon Emerson gave them his note for that amount, which note they sued, and, after judgment had, this land was set off to them on execution. It is now said that Brooks paid the whole amount of Emerson's indebtedness to the ward; but if this is so, it was done a long time after the land was set off, and a perfect title had been acquired by them jointly. It is said that although the title originally vested in them both, yet that, by this subsequent payment by Brooks, he ought *in equity* to hold the whole title.

It will be seen that this is an old transaction; that the defendants are executors, having no personal knowledge of the state of accounts between Brooks and Childs. Ought this court, then, in the exercise of a *sound discretion*, to interfere? Childs is dead. There is no proof that in his life time he was ever called on by Brooks to convey or to contribute; and if Childs had contributed, it is not to be supposed that these executors could now show it. 1 *Madd. Ch.* 99, 100.

The only ground on which this bill can be sustained, is, that Childs held in trust for Brooks. When and how was this trust created? Our statute, p. 535, expressly enacts that there can be no trusts in land, &c., unless created by some writing declaring the trust, with a saving of such trusts "as arise or result by implication or construction of law." This moiety must, then, be claimed by virtue of a *resulting trust.* Cases of resulting trusts arise where one pays money and a

title is given to another. This is " in analogy to a feoffment at common law, which, if made without consideration, the use results to the feoffor." *2 Madd. Ch.* 112; *8 N. H. Rep.* 195.

Our view of the matter is, that the note given to the sureties was on good consideration. By receiving it, and especially when they had acquired title to the land, they assumed Emerson's debt to that amount on the bond. After holding the land one year, they were no longer sureties but principal debtors, having received the land as a fund to pay the debt. *5 N. H. Rep.* 71, *Buffum* vs. *Green.* The title had vested in the two; nothing but a conveyance from Childs could divest his title. The subsequent payment by Brooks, if made as he contends, could have no such effect. Suppose two purchase land, giving in return their joint note, and take a deed to themselves as tenants in common; if one of them should pay the whole purchase money, would the title to the whole vest in him? or, if he paid two thirds of it, does he acquire a title to two thirds instead of a half of the land? And how can that case be distinguished from the transaction between Brooks and Childs?

The truth is, that if all the facts are as Brooks has attempted to prove, he had a full and adequate remedy at law, by action for contribution. That remedy he may have lost by his own *laches,* but what *equity* has he beyond that of any other creditor whose claim has been barred by the statute of limitations?

PARKER, C. J. The plaintiff in this case asks an injunction from this court, to restrain the defendants from making sale of certain lands in the town of Stoddard; and in addition to this he asks that they, and all persons claiming an interest under their testator, Childs, may be required to relinquish all title to the premises, and also that an account may be taken, as between himself and Childs, of what is due to

him, and for such other and farther relief as the case may require.

The defendants on their part claim a right to go on and make the sale ; they, as executors of Childs, having obtained a license from the probate court, in the manner provided by law in cases of insolvent estates.

The plaintiff has no title to the land in question ; having long since sold to Gerould, the present tenant. If the question, then, were simply whether a possession should be quieted by injunction, it might be doubted whether the present plaintiff was entitled to maintain this bill. But the plaintiff is a warrantor of Gerould, who is in possession, as it is alleged, under a conveyance made to him from the plaintiff ; and as the rights of Childs, and of the defendants through him, may depend upon an account to be stated between the present plaintiff and Childs, he seems to be a proper party to the questions which have been raised in the case. If an account is to be taken, he is a necessary party to that proceeding ; and that consideration, and the operation of his conveyance to Gerould, and his liability on his covenant of warranty, would make him a proper party, if Gerould himself were seeking relief.

A farther question might have been raised, viz : whether Gerould ought not to have been made a party to this bill. If this objection had been taken at an early stage of the proceedings, we should probably have regarded it as the proper course. But neither of the parties have suggested that his interests require that he should be made a party, and we do not deem it necessary to delay the cause for that purpose. His rights will not be affected to his prejudice.

From the whole evidence it appears clearly that the title to the land was obtained in the manner stated by the plaintiff in his bill, and also that the plaintiff has paid the deficiency for which he and Childs were liable as sureties of Emerson. It seems, too, that Childs paid some tax bills as-

sessed upon the estate, before the title vested in him and the plaintiff under their levy.

The bill alleges that Childs agreed to convey to the plaintiff; but of this there is no sufficient evidence. The matter was allowed to remain for future adjustment between them. Brooks, who had paid all the money, unless it were a small sum for the taxes, was permitted to remain in possession, and permitted after a time to convey the land. And here we should make a remark as to the effect of the possession by Brooks and his assigns. The statute of limitations cannot be, as contended for by the plaintiff's counsel, a bar to the right of Childs, or Childs' legal representatives, for this reason, namely, that up to the time of the conveyance to Gerould there was no possession adverse to Childs' right. The conveyance to Gerould was in May, 1822. Previous to that time the possession by Brooks was the possession by Childs, and cannot be otherwise regarded.

We come, then, to consider the question as to a resulting trust, which, it is alleged, arises, by implication of law, in the land, for the benefit of the present plaintiff. Certainly it is not an ordinary case of a resulting trust. Such a trust commonly arises where a title has been acquired by a person by whom nothing was paid. As has been said by the defendants' counsel, the fact that a purchase has been completed on the credit of two, and afterwards paid for wholly by one of them, will not of itself give rise to a resulting trust. 5 *Paige R.* 114, *Leggett* vs. *Dubois ;* 3 *Mason* 347, 364, *Powell* vs. *Monson & Brimfield Manf. Co.*

The case now presented to us, however, was not, properly speaking, the case of a purchase. Nor, if it could be regarded as a purchase, was it a purchase upon credit. As between Brooks and Childs, on one part, and Emerson on the other, it was conveyed in trust to indemnify them. If Emerson had paid his ward, he would have been entitled to a reconveyance of the land, if the trust could be shown. There was a trust in his favor until Brooks paid his deficiency for

him ; and of course there was up to that time a resulting trust to either of the sureties who saw fit to pay, to have the property appropriated to his relief. 4 *Johns. Ch. R.* 545, *Lawrence* vs. *Cornell;* 5 *Wend.* 85, *N. Y. State Bank* vs. *Fletcher ;* 2 *Johns. Ch. R.* 283, 306, *Hendricks* vs. *Robinson ;* 6 *Vesey* 805, *Ex parte Gifford;* 2 *Vernon* 608, *Parsons* vs. *Briddock;* 11 *Vesey* 12, 22, *Wright* vs. *Morley ;* 2 *Binney* 382, *Miller* vs. *Ord.* See, also, the principle recognized in 1 *Atk.* 133, *Ex parte Crisp;* 4 *Johns. Ch. R.* 123, 130, *Hayes* vs. *Ward;* 1 *Ditto* 409, 413, *Cheesebrough* vs. *Millard ;* 3 *Paige* 614, *Neimcewicz* vs. *Gahn;* 10 *Johns. R.* 524, *Clason* vs. *Morris ;* 6 *Paige* 521, *Eddy* vs. *Traver ;* 4 *Johns. Ch. R.* 530, *Scribner* vs. *Hickok.*

These are cases of sureties, and illustrate their rights. It is true, that the principle that a surety who pays the debt is entitled to the benefit of all the securities which the creditor possesses, cannot be universally applied without some qualifications. In the case of co-sureties who hold a mortgage or pledge jointly for their security, when one pays the debt he is entitled to claim contribution of the other, and need not resort to the mortgage or pledge for his indemnity, before making the claim. We do not propose, however, at this time to discuss these questions at large, nor to dwell upon the necessity for, or the effect of, a tender of a release by the surety who paid the whole, to a co-surety, of any claim for contribution. It is enough at present for us to say that we are clearly of opinion that until the time when Brooks paid the money to Emerson's ward, the land continued to be held in trust for Emerson. When there is a resulting trust under a *conveyance,* it must arise at the execution of the deed. When the legal title has once passed to the grantee, a resulting trust cannot be raised by the subsequent application of the funds of a third person to the improvement of the property, or to the payment of the purchase money, so as in any way to divest the legal title of the grantee. 3 *Paige* 390, *Rogers* vs. *Murray.* But this trust does not arise under *the deed* to

Brooks and Childs, or date from the time of its execution. Such as it is, it springs from the *payment* by Brooks to Harriet E. Newman. That *payment*, of itself, by the operation of law created a resulting trust in favor of the sureties. The facts necessary to establish this trust may properly be shewn by parol evidence. What they are, it is not now necessary to repeat particularly. From the time of that payment, the title was held by Childs and Brooks, not for Emerson, but for their own security. Brooks, however, having in person, or by his grantee, Gerould, possession of the land, and having paid more than his share, was and is entitled to hold it until Childs shall have accounted.

If the sale of the land in 1822 had been by both parties, the sum received would not have been divided equally between them, but must have been distributed according to the sums each had paid. The silent acquiescence of Childs in the sale, his neglect to interfere, and the bar of Brooks' right to contribution by the lapse of time, indicate that Childs ought not in equity now to claim more than he could have claimed in that case. If Brooks has been negligent in enforcing contribution, Childs ought not to complain of it, or take advantage of it, farther than as a bar to a personal action; and if Childs has neglected to assert his title, Brooks ought not to avail himself of it farther than as a conditional confirmation of the sale to Gerould, the legal title or right in Childs not being barred. Brooks' claim to contribution has been rejected by the commissioner on Childs' estate, as having been long since barred by the statute. But it is not equitable for Childs' representatives now to enforce a claim, under his legal title, which shall prevail farther than to give the estate the benefit of the land as security for whatever sum Childs ought to have received, had the matter been settled by the parties in 1822, before Brooks sold the land.

*Decree for an injunction, unless the defendants account within sixty days. The plaintiff to take no costs.*