## GRAVES *v.* GRAVES & a.

Where a deed is made without any consideration, there is no resulting use or trust for the benefit of the grantor, if a consideration is stated in the deed, or if a use is expressly limited in the deed of the whole property.

The receipt of a consideration, admitted in a deed, cannot be contradicted for the purpose of raising a resulting trust for the grantor.

If a use is expressly limited in a deed in favor of the grantee, no other use will be implied inconsistent with it, in favor of the grantor.

IN CHANCERY. The bill (filed January, 1851,) sets forth that the plaintiff, William Graves, on the 12th of December, 1835, was seized in his own right in fee simple of a tract of land in Bradford, containing eighty-six acres, more or less, being lot No. 85, in the southwesterly corner of Bradford. On that day, by his deed duly executed, he conveyed the premises to Thaddeus Graves, who never, in fact, paid any consideration for the land or the conveyance, but the land continued and still is the property of the plaintiff. The deed was intended to be and was a conveyance of the land to Thaddeus, to be held by him and his heirs in trust for the plaintiff, the beneficial interest still continuing in him. Thaddeus held the land from the time of the conveyance till his decease, in trust as aforesaid and not otherwise, and the plaintiff, for a considerable portion of that time, has

himself possessed and occupied the premises, and received the rents and income of the same.

Thaddeus Graves died 17th of March, 1848, leaving Annette G., his widow, and Caroline, Charles, Thaddeus, Mary, William and Martha, his children and heirs at law. The children, being minors, Levi Goodale is their guardian, and Simon W. Jones is administrator of the estate of the deceased.

The widow, administrator and guardian, now pretend that Thaddeus paid a full and *bona fide* consideration for the land; that it was not conveyed in trust; and that the beneficial interest is not in the plaintiff, but belongs to the heirs, who hold it discharged of any trust, absolutely and in fee simple, whereas the plaintiff alleges the contrary to be true.

The bill prays that the widow, administrator and guardian, and the heirs personally or their guardian, may answer, under oath, that they may be compelled, by a decree, to reconvey all their right to the plaintiff, and for general relief. It also prays an injunction against selling and waste, and for process.

A temporary injunction was issued in vacation, by the chief justice, upon petition and affidavits.

The answer of the widow admits the plaintiff's title, and his deed to the deceased, as alleged. She denies all knowledge and belief that no consideration was paid for the premises, or that any trust was connected with the conveyance, or that any beneficial interest was reserved, or was intended to be, to the plaintiff. She denies that, to her knowledge or belief, the plaintiff ever occupied the land, or any part of it, unless by her husband's permission, after the conveyance to him, or that he ever received any rent or income of the same.

She admits the death of Thaddeus, and his leaving a widow and children, and the appointment of administrator and guardian, as alleged.

In answer to the interrogatories in the bill, she says she

has no personal knowledge what took place at the time of the conveyance, but, from hearsay, &c., she believes that a full and adequate consideration was paid by Thaddeus, and received by the plaintiff. " This fact the said complainant, on one occasion, admitted to the said Thaddeus, during his lifetime, in the presence and hearing of this defendant." She has no knowledge, information or belief that the plaintiff ever occupied or improved said premises, or any part of them, or ever received any rent or income of the same, after the deed. To her best knowledge, information and belief, the beneficial interest in the premises has not belonged to or been in the plaintiff. She never heard said Thaddeus say or declare, in his lifetime, that the said land was the property of the plaintiff, or that he held it in trust for him, or words to that effect.

The guardian of the children admits the plaintiff's original title, his deed to Thaddeus, the death of the latter, his leaving a widow and children, and the appointment of administrator and guardian, as alleged in the bill. He denies that, to his best knowledge, information and belief, no consideration was, in fact, paid for said land, and that the same continued in equity the property of the plaintiff; or that the deed was intended to be, or was, in fact, a conveyance in trust for the plaintiff; or that the beneficial interest, or any interest, continued in the plaintiff after the execution of the deed; or that the plaintiff, after the date of the deed, ever occupied the premises, or any part of them, or received any rent or income of the same.

To the interrogatories of the bill, he answers in similar terms to the widow, except the admission stated to be made by the plaintiff.

The answer of the administrator is, in substance, the same as that of the guardian.

The evidence, relied on by the plaintiff, was as follows:

An office copy of the deed William Graves to Thaddeus Graves, dated December 12th, 1835, acknowledged the same

day, at Boston, and recorded December 14th, 1835 ; consideration $300 ; description " all my right, title, interest, claim and demand in and to a certain tract or parcel of land in Bradford, &c., containing, by estimation, eighty-six acres, more or less, it being the lot numbered eighty-five and situated in the south west corner of Bradford.

To hold to T. G. and his heirs and assigns, to his and their use forever."

Covenants of warranty in usual form.

Deposition of N. G. Jones.   He has been acquainted with the plaintiff and Thaddeus Graves for twenty years past, and with the *bog lot,* so called, in Bradford, No. 85.

He says, " I had conversation with Mr. Thaddeus Graves, in reference to the ownership of the bog lot, in the year 1841 or 1842.   I was at work with him, logging off some pines, and he said he wanted to get pay for taking care of the land ; that the land belonged to William Graves, the complainant.   I think I have a great many times heard Thaddeus Graves say that William Graves owned the land.   I don't know that I can tell any where nigh how many times I have heard him say so.   I have been with him a great deal, and have heard him say so a great many times.   I think he said the deed was sent to him from Concord.   I understood from Thaddeus that the deed was sent to him, because Mr. Brockway was about to commence a suit against William Graves, and he did not wish to be brought into New Hampshire by it.   I never saw the deed of the land to Thaddeus, but understood from him that he had one, but never heard him, at any conversation, claim the land to be his own.   In 1848, in May, I built some wall on the lot, at the request of William Graves, who paid me for it.   Thaddeus died the March previous."

On cross-examination.   " I can't state the time nor any thing more of the conversation than I have stated.   I think he told me that William Graves made the conveyance of the land to him, to prevent its being attached by Brockway,

who had a claim against him. I think William Graves has told me he made the conveyance of the land to Thaddeus, to prevent its being attached by Brockway, or some of his creditors, or to that effect once, a little more than a year ago, when I was going to Concord with him to attend probate court. Till within about three years the bog, so called, was mowed. About three-fourths of the lot was woodland. It is now woods and pasture; there are no buildings on it, and have never been any."

Being re-examined, he says: " We were speaking about the land, and William Graves said Elbridge Brockway was about to commence a suit against him, and he did not want to be taken into New Hampshire to have it tried. He said he had offered $25, if he would bring his suit against him in Massachusetts, and have it tried there. He said he then told his clerk to make out a deed to Thaddeus Graves, and he did so; and he sent it to Concord and had it recorded there; and that it laid there some time, and Thaddeus never knew of it till he told him of it. The suit Brockway threatened to commence against Graves was in relation to part of a gristmill. I think it was never commenced. I was acquainted with William Graves in 1835. He then resided in Boston, was a flour dealer, and was reputed to be rich. He stopped business in Boston in 1843. He has property in his hands which I consider he owns,—two horses, two oxen and a cow."

Deposition of Lemuel Cooledge. He knows the parties, and Thaddeus Graves from childhood, and is acquainted with the bog lot, or No. 85 in Bradford.

He says, " some time in 1844, I think, I cut some hoop-poles on the bog lot, by leave of Thaddeus Graves. Some little time after I paid him a dollar for them. When I paid him, he said ' Uncle Bill,' as William Graves, the complainant, was commonly called, ' owns that lot.' I told him he must speak to him about it, as I did not wish to pay for them twice, and he said he would; it would be all right.

I never heard him say anything about the ownership of the land at any other time."

Deposition of Isaac Proctor, 2d. " Some time, I think in the year 1845, I called upon Thaddeus Graves, late of Washington, deceased, for liberty to cut some hoop poles on the bog lot, so called, in Bradford. Mr. Graves told me that he did not own the land, but that it belonged to Uncle Bill, meaning William Graves, and that I must go to him and see about cutting the poles, if I wanted any."

Deposition of S. W. Jones. " I am administrator of the estate of Thaddeus Graves, late of Washington, deceased, but have no interest in the suit in chancery now pending between William Graves and the widow and heirs of said deceased. At the time an inventory of the property of said Thaddeus was taken, after his decease, I inquired of his widow about the bog lot. She said that land was not theirs, and never was. At other times since, she has repeatedly told me that her husband did not own that land, that it belonged to Uncle Bill, meaning William Graves. At the time her dower was set off she and I told over to the committee the real estate which her husband owned; but she made no mention of the bog lot, claimed no share in that land, and none was set off to her."

*M. W. Tappan,* for the plaintiff.

The prayer of the bill is for a reconveyance of a certain lot of land known as the bog lot, which, as the complainant alleges, was his own land, or in which he had the beneficial interest, and which was held in trust for the complainant, by Thaddeus Graves deceased.

The answers deny, in general terms, all knowledge or belief that the land was so held in trust by said Thaddeus, or that the complainant had any interest therein. The answers do not undertake to deny positively and distinctly that such was the fact, nor could the defendants, from the very nature of the case, make such distinct and positive denial.

Their position as heirs, administrator, &c., is such, that they could not be expected to know how the real fact was. But the answers admit that, at the time of the conveyance to Thaddeus Graves, the land in question was owned by William Graves, and the character of the conveyance, whether it was absolute or in trust, is left to be determined by the evidence in the case, if such evidence, under the circumstances, is admissible. Then as to the evidence, it appears from the testimony of Jones, Cooledge and the others, that Thaddeus Graves, in his life time, declared that the land was not his, but that it belonged to William Graves, the complainant. His acts, in refusing to receive pay for the timber cut upon the land, accompanied by his declarations; his building wall and receiving pay for it from the complainant; his explanation, as testified to by Jones, as to the manner in which the land came to be conveyed to him, all go to show that it was the property of the complainant, and not his.

I. This, then, would seem to be clearly the case of a resulting trust, or one arising by implication of law. William Graves, the complainant, was the owner of the land. He conveyed it to Thaddeus, as we contend, for a legitimate and lawful purpose, without the payment by him of any consideration whatever. He was merely a nominal purchaser of the land, repeatedly declaring, in his lifetime, that it was not his, but the property of William Graves, and declaring, also, the purpose for which he held it. He must, therefore, be considered as holding it in trust for William Graves.

It is difficult to see wherein this case differs from the examples given in the books of implied or resulting trusts. It is said to be well settled that when a man buys land, and pays for the same with his own money, and takes a deed in the name of another person, a trust results, or arises by implication of law, in favor of him who pays the purchase money. *Page* v. *Page,* 8 N. H. Rep. 195; *Scoby* v. *Blanch-*

*ard*, 3 N. H. Rep. 170; *Pritchard* v. *Brown*, 4 N. H. Rep. 397; 2 Story's Eq. J. 443, § 1201, and authorities there cited.

What difference could it make in the case, whether the land had been conveyed by A. B. to Thaddeus Graves, and the purchase money paid by William Graves, or whether the land, having been before purchased by William Graves, was conveyed directly by him to Thaddeus, for a specific purpose, Thaddeus paying nothing for it. The purchase money, the beneficial interest, belonged to William Graves in the one case as well as in the other. It would seem that the facts in this case show as strong an example of a resulting trust, as the facts disclosed in *Pritchard* v. *Brown*.

In that case, Sanderson, owning the land, conveyed it to Felt, who paid nothing for it, and Felt, by agreement between him and Sanderson, afterwards conveyed it to Lees, in trust, for the benefit of Sanderson, no trust appearing upon the face of the deed. Here was, technically, no actual payment of the consideration by Sanderson. He, in effect, owned the land. Suppose, instead of Felt's conveying the land to Lees, he had conveyed the land to Sanderson, and Sanderson, without receiving any consideration, had himself conveyed it directly to Lees, to be held by him for the benefit of Sanderson, would a trust any the less have resulted in Sanderson's favor? And yet that is precisely our case, as it seems to us. This view of the matter would seem to conform to the view taken by Judge *Story* of resulting trusts. He says the clear result of all the cases, without a single exception, is that the trust of the legal estate, whether freehold, copyhold or leasehold, whether taken in the names of the purchaser and others, jointly, or in the names of others, without the purchaser, &c., results to the man who advanced the purchase money. This is a general proposition, supported by all the cases, and there is nothing to contradict it, and it goes on a strict analogy to the rule of the common law, that where a feoffment is

made without consideration, the use results to the feoffor. 2 Story's Eq. J. 444, 445; *Dyer* v. *Dyer*, 2 Cox 29–9.

If, then, the facts in this case, (supposing them to be well proved,) constitute a resulting trust in favor of the complainant, the question arises whether, under the particular circumstances, it is competent to prove them by parol testimony. As a general rule, it is now perfectly well settled, that it is not necessary that the trust should appear on the face of the deed, but it may be proved, rebutted or discharged, by parol evidence. See cases cited from N. H. Rep. and authorities *passim*. There is nothing in this case to take it out of the operation of this rule, but, on the other hand, the authorities, are directly in point where trusts have been proved under almost the precise circumstances of this case. Judge *Kent*, (4 Com. 306,) says, the mere want of a valuable consideration will not, of itself and without any auxiliary circumstances, create a resulting trust, and convert a grantee into a trustee. There must be both the absence of a consideration, and also a declaration of the use. This declaration may be proved by parol, for although it has been a matter of some controversy whether, after the death of the nominal purchaser, parol proof alone is admissible, against the express declaration of the deed, to prove the trust, it is now well settled and established that it may be so proved. 2 Story's Eq. J. 244, note; *Leach* v. *Leach*, 10 Ves. 54. But the case of *Boyd* v. *McLean*, 1 Johns. C. Rep. 582, which is recognized as good authority by the court in *Page* v. *Page*, seems to have put this matter at rest. It is there held, after an examination of the cases, that a resulting trust might be established by parol proof, not only against the face of the deed itself, but in opposition to the answer of the nominal purchaser denying the trust, and even after the death of such purchaser. See 4 Kent's Com. 306 and authorities cited.

It is sufficient, "if the nominal purchaser, in his lifetime, gives a declaration of, or confesses the trust." 2 Story's Eq.

J. 444, note and authorities; *Ambrose* v. *Ambrose*, 1 PW. 322; *Ryall* v. *Ryall*, 1 Atk. 59, 60.

II.   Nor can it be said that the admission of parol testimony here goes to contradict the deed.   It is not introduced to defeat the operation of the conveyance, but merely to give it the effect intended by the parties.

" It must now be considered as settled in this State, that a receipt on a deed may for any purpose except that of defeating the conveyance, be contradicted like any other receipt."   *Pritchard* v.¹ *Brown*, 4 N. H. Rep. 400; *Morse* v. *Shattuck*, 4 N. H. Rep. 229.   In *Shepherd* v. *Little*, 14 Johns. 210, it was decided that when the consideration of the conveyance was expressed in the deed, and that it was paid, parol evidence was, notwithstanding, admissible to prove that it was not paid.   *Morse* v. *Shattuck*, 4 N. H. Rep. 232.

III.   It may be said that the conveyance from William Graves to Thaddeus Graves was, under the circumstances, fraudulent, and that, therefore, the court will not compel a reconveyance.   But the evidence shows nothing of the kind.   The conveyance was not made to defeat creditors, for it is not pretended that William Graves was in debt, nor is it disputed that he was, at that time, a man of property, and doing an extensive business in Boston.   The immediate cause of the conveyance, as disclosed in the testimony, was to change the venue of a lawsuit about an old mill, which was never commenced.

*Perley*, for the defendant.

The bill alleges that the deed of William Graves to Thaddeus Graves was made without any consideration, and that the land was to be held by the grantee and his heirs, in trust for the grantor.

The answers deny that the deed was made without consideration, and that it was made in trust for the complainant.   The deed recites that the conveyance was made in

consideration of $300, paid by the grantee to the grantor, and the habendum is to the use of the grantee and his heirs, with a warranty against all persons. There is no writing declaring any trust.

I. The evidence, if competent, is not sufficient to establish the fact that the conveyance was made without consideration and upon trust. The party sought to be charged with the trust is dead. The deed is near twenty years old. The evidence fails to show possession by the complainant, and is of the loosest character. The testimony of the administrator is incompetent. The bill prays for a decree against him, he has answered, and proof has been taken on the replication to his answer. Gresley's Ev. 244; 2 Dan. Eq. Pr. 1038, 1039, 1042; *Boyd* v. *McLean*, 1 Johns. C. R. 590.

II. The evidence is not competent to show a trust for the complainant.

1. Parol evidence cannot be received to show a declaration of a trust, or a declaration contemporaneously with the deed to hold the land in trust. Such evidence is expressly excluded by the statute. Parol evidence can only be received to show a fact, from which the law, without any declaration of a trust or agreement of the parties, implies a trust resulting from the fact proved, as where the money paid belonged to a third person.

If the fact were admitted that the deed was made without any consideration, the deed would stand without the incompetent parol evidence, as a deed of gift made to the donee, to the use of him and his heirs, and no consideration would be necessary to give effect to the conveyance. The deed gives the land to the donee, to the use of him and his heirs. In the absence of any thing shown to the contrary, this vests the legal and beneficial estate in the donee, and the verbal evidence is introduced to control the effect of the deed, and show that the beneficial interest was reserved for the donor.

In this case, therefore, the trust attempted to be set up does not arise by implication of law, from the fact that no consideration was paid, but from the declaration of the donee and the agreement of the parties, which cannot be shown without a writing. *Philbrick* v. *Delano*, 29 Maine Rep. 410; *Dean* v. *Dean*, 6 Conn. Rep. 285; 4 Kent's Com. 306; *Pritchard* v. *Brown*, 4 N. H. Rep. 401. These cases clearly establish the position that mere want of consideration will not create a resulting trust.

It is said that where a deed of feoffment was made without consideration, and the deed neither recited a consideration to have been paid, nor limited the use to the feoffee, · a trust resulted to the feoffor; but this was upon the notion that there must be a consideration expressed in the deed of feoffment, or otherwise nothing would pass. *Lloyd* v. *Spillet*, 2 Atk. 150. But this is not a deed of feoffment; it gives, grants, bargains, sells and conveys the land, but does not " enfeoff" the donee, and a consideration is not necessary. to a deed of gift such as this is.

2. The pecuniary consideration recited and acknowledged in the deed cannot be denied to have been paid to defeat the operation of the deed. *Scoby* v. *Blanchard*, 3 N. H. Rep. 173; *Morse* v. *Shattuck*, 4 N. H. Rep. 231, 232; *Pritchard* v. *Brown*, 4 N. H. Rep. 399; *Wilt* v. *Franklin*, 1 Bin. 518, 519; Sh. Touch. 222, 223; *Powell* v. *Manufacturing Co.* 3 Mason, 357; *Botsford* v. *Burr*, 2 Johns. Ch. Rep. 415; *Philbrick* v. *Delano*, 29 Maine 410; *Dean* v. *Dean*, 6 Conn. Rep. 285.

The authorities very fully establish the position that where · the deed either expresses a pecuniary consideration or limits the use to the grantee no parol evidence can be received to show that the conveyance was made in trust for the grantor. Some cases tend to maintain the ground that where the deed of bargain and sale neither recites a pecuniary consideration nor limits the use to the bargainee, it may be shown by parol that no consideration was, in fact, paid; and that

from this fact that there was no consideration, the law would imply a resulting trust for the bargainor; but in this case the deed both recites a pecuniary consideration and limits the use to the bargainee.

III. The conveyance was made to defeat and defraud a creditor of the complainant, and cannot be impeached by him. The land was liable to be attached for the satisfaction of the creditor's claim. The conveyance was made to prevent him from satisfying his debt in that way, and was therefore fraudulent as to him and void. It was an actual and not a constructive fraud.

The deed, under our statute, being duly executed and recorded, conveys the title and legal seizin, and the evidence shows that Thaddeus Graves died in possession. *Dyer* v. *Homer*, 22 Pick. 258; *Randall* v. *Phillips*, 3 Mason, 388; *Osborne* v. *Moss*, 7 Johns. 161; *Bryant* v. *Mansfield*, 22 Maine Rep. 360.

BELL, J. By the statute of frauds in force here at the time of this transaction, which was in the same terms as the statute 29 Cha. 2, ch. 3, §§ 7, 8, and which is believed to be unchanged in its legal effect by our present statute, Rev. Stat. ch. 130, § 13, no trust concerning real estate, excepting such as may arise or result by implication of law, shall be created or declared, unless by writing. No parol evidence shall be received to prove any conveyance to be made in trust, except in trusts resulting by operation of law. Of such resulting trusts there are many cases stated in our books, where the trust is implied from the relative situation of the parties and the circumstances of the transaction. 2 Bouv. Inst. 323; 4 Ib. 242; 2 Fonb. Eq. 119. Of these, the most common case in our time is that, where upon a purchase of land, the deed is taken in the name of one person, while the consideration paid is the property of another. In such a case it is clearly settled, that unless there are other circumstances demonstrating a different intention, (4

Bouv. Inst. 243,) there is a resulting trust in favor of the
owner of the money, and the facts necessary to raise such
trust as a legal implication may be shown by parol. *Page*
v. *Page,* 8 N. H. Rep. 187; *Scoby* v. *Blanchard,* 3 N. H.
Rep. 170; *Pritchard* v. *Brown,* 4 N. H. Rep. 397; *Brooks*
v. *Fowle,* 14 N. H. Rep. 248; and see the cases collected in
U. S. Eq. Dig. 611. Such trust cannot be shown by proof
of any declarations of the grantee of the deed, that he holds
the property in trust, but his admissions of facts, from which
a trust is implied by law, are admissible as proofs of those
facts.

    In former times it was settled, that " where the legal es-
tate in land is conveyed to a stranger without any consider-
ation, there arises a resulting trust to the original owner," (1
Cru. Dig. 420,) or as the old doctrine is stated by Coke, (Co.
Litt. 23 a. 271 a.) So much of the old use as the owner of
the land does not dispose of, remains in him. " So that,
(says Cruise,) where a person seized in fee simple levies a
fine, or suffers a recovery without any consideration, or de-
claration of the uses, to which it shall inure, the use results
back to himself, and the statute transfers the legal estate to
such resulting use, by which means he is seized in fee sim-
ple, in the same manner as he was before." 1 Cruise Dig.
399. So was the law in the case of a feoffment. *Lloyd* v.
*Spillet,* 2 Atk. 150. " It follows, (says Cruise,) from the
same principle, that when no use arises upon a covenant to
stand seized, or bargain and sale, either for want of a suffi-
cient consideration, or for any other cause, such use will re-
main in the covenantor or bargainor." 1 Cruise Dig. 402,
§ 37.

    These two classes of cases of resulting trust are distinct,
and are each governed by the rules and principles settled by
legal decisions as applicable to them, and however plausi-
ble it may seem to regard them as both standing upon the
same reason, and therefore to be governed by the same rules,
it is too late now to resort to such analogies, unless in cases

which present such features, if such could be conceived, as have not been considered by the courts.

The aim of the plaintiff is, of course, to bring his case within the second of these classes, namely, where a conveyance is made without any consideration. And we must therefore inquire what rules and principles have been settled in relation to cases of this kind. And here we are struck with the circumstance, that we have found no modern case on this subject. We infer from this that there is probably something in the modern modes of conveyancing, which creates a difficulty in attempts to set up trusts of this kind. And these difficulties are found on recurring to the books where the subject is more fully discussed.

Story (Eq. Jur. § 1197) is more full than any writer we have found. He says, "another common transaction, which gives rise to the presumption of an implied resulting use or trust is, where a conveyance is made of land or other property without any consideration, express or implied, or any distinct use or trust stated. In such a case the intent is presumed to be, that it shall be held by the grantee for the benefit of the grantor as a resulting trust. But," he adds, "if there be an express declaration that it is to be in trust, or for the use of another person, nothing will be presumed against such a declaration. And if there be either a good or a valuable consideration, then equity will immediately raise a use or trust correspondent to such consideration in the absence of any controlling declaration or other circumstances." And in section 1199 he says : "This distinction, however, is to be observed in cases where a consideration, though purely nominal, is stated in the deed. If no uses are declared, the grantee will take the whole use, and there will be no resulting use for the grantor, because the payment even of a nominal consideration, shows an intent that the grantee should have some use, and no other being specified, he must take the whole use. But when a particular use is disclosed, then the residue of the use results to the

grantor, for the presumption that the grantor meant to part with the whole use is thereby repelled." These positions are sustained by the authorities cited. See 4 Kent's Com. 305; 2 Com. Dig. Chan. 4 W. 4.

The deed under which the property is held by the defendants, admits the payment of a consideration of $300, and it is not suggested that this is not an adequate consideration for this property. The general rule is that a grantor is bound by the recitals and admissions in his own deed, and upon this rule he would not be at liberty to introduce verbal evidence to contradict the fact so admitted. If that principle is applicable here, there is an end to the plaintiff's case. It is no longer a case of want of consideration. But it is said that the receipt of the consideration acknowledged by the deed is like any other receipt open to be explained or contradicted for any purpose, except that of defeating the conveyance. And this view is sustained by the cases cited for the plaintiff. But it does not seem to us to reach the plaintiff's case. The very purpose of this evidence is to defeat this conveyance. Its object is to reduce it to a writing having the form of a conveyance, but by which nothing is really conveyed. It purports to convey this property to Thaddeus Graves. It operates, if this evidence is admitted, to convey to him nothing which the law does not instantly restore to the plaintiff. No case can be supposed of evidence admitted to disprove a consideration for the purpose of entirely defeating a conveyance, if this is not.

But it is said that in the other class of implied or resulting trusts, to which reference has been made, parol evidence has been held admissible, to show that the money admitted to have been paid by the grantee was the property of another, but the cases have little resemblance. There can be no pretence that the money, if any was paid, was not the money of the grantee. It could not have been the money of the grantor. In the cases referred to, it is held, that to prove the money paid was not the money of the grantee, is

not inconsistent with the deed, because that merely alleges, it was paid by the grantee, without asserting or admitting anything as to the ownership. While here to deny that anything was paid is obviously inconsistent with the deed.

The deed exhibited in the case expressly limits a use of the property. " To have and to hold the above granted premises, with the privileges and appurtenances thereto belonging, to the said Thaddeus Graves and his heirs and assigns, *to his and their use and behoof forever.*" " If there be an express declaration that it is to be in trust or for the use of another person, nothing will be presumed against such a declaration." 1 Sto. Eq. Ju. 1197 ; 2 Fonb. Eq. 133. Whether there is or is not a consideration, if a use is expressly limited to another, nothing results to the grantor, unless it may be of some undisposed residue. 2 Fonb. Eq. 118. No mode of obviating this objection has been suggested. We have found none in any of the books to which we have referred.

As the recital of a consideration is now universal in all deeds, and as a use is generally expressed, we find in the rules thus referred to a satisfactory reason for the want of any recent decisions upon this subject.

Upon these rules of the law the plaintiff has no evidence upon which he can have the relief he seeks.

In the class of cases where it is held that a trust results to the party who owns the money, it is held that the evidence must be clear as to the ownership of the money. 2 Fonb. Eq. 117. And in a case of this kind the proof of want of consideration ought to be equally satisfactory. All the evidence which tends to show words or actions admitting the title of the plaintiff to this property are admissible as evidence tending to establish a parol declaration of trust, which is forbidden by the statute.

It is admissible merely as evidence tending to prove the fact, on which the plaintiff relies to prove his trust, the fact that there was never any consideration paid. Now there is

here no direct evidence that this deed was made without consideration; and the admissions before referred to have but a slight and inconclusive bearing to establish that fact; and our impression is, that if in a case of an equity clearly shown, an effort should be made to save the rights of a party who had had his confidence abused; this is not that case. Fifteen years the plaintiff slept upon his rights, till the death of his grantee; and his evidence is at best unsatisfactory and inconclusive, if it were competent.

*Bill dismissed with costs.*